Verdict for defendant.

---

*In re* AH LUNG.

(*Circuit Court, N. D. California.* February 23, 1891.)

OPIUM SMOKING—SALE OF OPIUM.
  Order 2085 of the city of San Francisco forbids any apothecary or other person "to sell, barter, give away, dispose of, or deliver to any person in the city and county of San Francisco any opium or morphine, or any extract of opium, or product thereof, except upon the written prescription or written order of a practicing physician." Section 7 of the order forbids any physician to prescribe "any of said substances, products, extracts, preparations, or compounds for the purpose or with the view of any person taking the same for curiosity, or to experience any of the sensations produced thereby, or to indulge in the use of the same, * * * for any purpose except *bona fide* medical purposes." *Held,* that such order forbids the sale of smoking opium.

*Habeas Corpus.*
*T. D. Riordan,* for petitioner.
*J. D. Page,* for respondent.
Before SAWYER, Circuit Judge.

SAWYER, J. The petitioner was arrested upon a complaint for selling to one Jerome Miller, "opium prepared and used for smoking and no other purpose," in violation of order 2085. The order makes it—

"Unlawful for any apothecary, druggist, or pharmacist, or any employe thereof, or any person whatever, to sell, barter, give away, dispose of or deliver to any person in the city and county of San Francisco, any opium or morphine, or any extract of opium or product thereof, except upon the written prescription, or written order of a practicing physician."

And section 9 of the order further provides, that—

"Any person violating any of the provisions of this order shall be deemed guilty of a misdemeanor, and punished by a fine not exceeding five hundred dollars, or by imprisonment not exceeding six months, or by both such fine and imprisonment."

It is earnestly argued, that, this provision was not intended to exclude the sale of smoking opium, but, only, opium and its products, used for medicinal purposes, and in such forms, as physicians are accustomed to prescribe; that physicians never prescribe opium in this form, and, consequently, a prescription could never be obtained, and therefore, that a construction embracing smoking opium, would be absurd. The well-established maxim that the law requires nothing impossible, as illustrated in *Re Leong Yick Dew*, 10 Sawy. 44, 19 Fed. Rep. 490, is cited. But those maxims only apply, where the law is susceptible of two, or more, constructions, as in the case cited. In this case, there is no impossibility, and there does not appear to me to be any room for construction. The provision is as direct, and specific, as it is possible to make it. The order does not permit "any person whatever" to sell, give away, or deliver "*any* opium or morphine, or *any extract of opium or product thereof*," without a prescription, etc. That language seems to be as comprehensive as it is possible to make it. Smoking opium is, certainly, either "opium" or an "extract or product thereof," and it is, probably, the very form in which the great bulk of all the opium produced in the world is consumed. Besides, it is manifest that it was designed to reach this form of the drug from the provisions of section 7, which, are, that—

"It shall be unlawful for any physician, *to prescribe or to give a prescription, or order for any of said substances, products, extracts, preparations, or compounds, for the purpose, or with the view of any person taking the same for curiosity, or to experience any of the sensations produced thereby, or to indulge in the use of the same, or in the cocaine, or morphine habit, or for any purpose, except bona fide medical purposes of cure or prevention of sickness or disease.*"

Thus, the order, itself, does not leave the matter, on the hypothesis, that physicians never do or would prescribe opium for the purposes of smoking, but it cuts off all possibility of evading the order by prescribing it for smoking, and for cognate uses, upon the pretense, that, it is for medicinal uses. I do not see how it is possible to doubt, under these harmonious specific provisions, that the broad scope claimed for this order, on the part of the city, is the proper construction. I think upon a full consideration of the ordinance, that the intention of the board, in passing the ordinance, is expressed in "unmistakable, and unambiguous

language." · Besides, this is a state law, and an authoritative construction by the state courts is controlling in the national courts. The construction here adopted, was given to the ordinance by a department · of the superior court of San Francisco, in the case of *People* v. *Ah Nun*, on appeal from the police court. While this is not a decision of the supreme court, and, absolutely, authoritative, it is a construction of a state court of the same grade as this court, and I should hesitate long before presuming to overrule it, on the construction of a state law, even if the construction adopted by the state court were doubtful, or deemed erroneous. The better way in such cases, if the construction is not satisfactory, and the construction, is a question at all for the national courts, would be to prosecute an appeal and follow it, if necessary, to the supreme court of the United States, in the regular order of proceeding.

It is urged that section 8, in certain cases, clearly violates the constitution of the United States, and that it is, consequently, void. But this case does not arise under section 8, and is not one of the cases mentioned. It will be time enough to consider that section, when a case of the kind, suggested by counsel, is presented, arising under the provisions of that section.

The petitioner must be remanded, and it is so ordered.