NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0594n.06

No. 12-5502

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
*Jun 21, 2013*
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF KENTUCKY |
| WILLIAM OSSIE LUCAS | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before:  GIBBONS and WHITE, Circuit Judges; and COHN, Senior District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.**  In October 2011, William Ossie Lucas pled guilty to conspiracy to distribute oxycodone and conspiracy to launder drug proceeds.  The district court sentenced Lucas to 135 months' imprisonment on each count, to be served concurrently.  Lucas appeals his sentence, arguing that the district court erred when it calculated his U.S. Sentencing Guidelines range by (1) applying a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) based on Lucas's conviction for carrying a concealed deadly weapon during the time period of the drug conspiracy; and (2) concluding, alternatively, that if the enhancement did not apply, then Lucas's conviction, which was later set aside, nonetheless would count toward his criminal history score.

---

[*]The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

Because the district court properly applied the enhancement pursuant to U.S.S.G. § 2D1.1(b)(1), we affirm Lucas's sentence.

**I.**

From early 2008 to August 2009, Lucas was a party to an agreement to travel from Kentucky to Florida to obtain oxycodone, which he and his co-conspirator sold in Kentucky. In August 2011, a grand jury charged Lucas with conspiracy to distribute oxycodone in violation of 21 U.S.C. § 846 (Count One) and conspiracy to launder drug proceeds in violation of 18 U.S.C. § 1956(h) (Count Two), in addition to several counts of distributing oxycodone, which were dismissed at sentencing. Lucas pled guilty to Counts One and Two pursuant to a written plea agreement.

The United States Probation Office prepared a presentence investigation report ("PSR") that calculated Lucas's Guidelines range.[1] In the course of calculating the offense level for Count One, conspiracy to distribute oxycodone, the probation office applied a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon based on Lucas's October 2008 arrest for carrying a concealed deadly weapon. It did not assess any criminal history points for this offense because Lucas possessed the weapon during the drug conspiracy and, thus, it was counted as a special offense characteristic. Based on a total offense level of 33 and a criminal history category of I, Lucas's recommended Guidelines range was 135 to 168 months' imprisonment.

At Lucas's sentencing hearing, he objected to the application of the two-level enhancement, arguing that his possession of a firearm was unrelated to the drug conspiracy. Lucas's attorney

---

[1]The probation office's calculations were based on the 2011 Guidelines.

argued that Lucas was working on a house with a friend on the day of his arrest and that Lucas's wife had given him the gun to hold for her. However, Lucas's attorney presented no testimony to this effect. The only pieces of evidence that he introduced were the state court docket and the police citation describing the circumstances surrounding Lucas's arrest. The citation indicated that police stopped Lucas's vehicle in Lawrence County on October 24, 2008, because it had expired plates and excessive window tint. During a pat-down, an officer discovered an unloaded .22-caliber pistol in Lucas's pocket.

The district court overruled Lucas's objection, holding that the government established that Lucas possessed a weapon during the drug conspiracy. The district court explained that it was irrelevant that Lucas's conviction eventually was set aside, because Lucas does not dispute that he possessed the firearm on that date. The district court acknowledged that while "there is no evidence that [Lucas] distributed pills" on the day that he possessed the firearm, such evidence is not necessary. Therefore, the burden shifted to Lucas to demonstrate that it was "clearly improbable" that the firearm was connected to the conspiracy. The district court held that Lucas did not meet this burden. It observed that Lucas presented no testimony that his wife had given him the firearm. Even if this were true, the district court said, it would not demonstrate that the firearm was not connected to the drug conspiracy. The district court cited the PSR, which stated that Lucas's wife traveled to Ohio to obtain oxycodone for distribution and that Lucas used the proceeds of those sales to finance additional trips to Florida and Ohio to obtain drugs. Lucas did not object to this portion of the PSR. Thus, the district court concluded that Lucas's wife was implicated in the drug conspiracy. Additionally, the district court observed that, according to the PSR, Lucas had been unemployed

3

since suffering an injury in 2006, calling into question the veracity of Lucas's attorney's explanation. The district court noted that even if Lucas were working on a house on the day of his arrest, "[m]any defendants have legitimate and illegitimate incomes." The district court found that Lucas's purported reasons for possessing the firearm were "simply not credible" and, thus, it was proper to apply the enhancement.

Lucas also objected to the probation office's failure to recognize that his conviction for carrying a concealed deadly weapon was set aside in January 2012 after his attorney contacted the state prosecutor. He argued that the conviction should not count toward his criminal history. Because the district court did not assess criminal history points based on Lucas's conviction, it denied this objection as moot. It observed, however, that if it had not applied the two-level enhancement, it would have counted the conviction toward Lucas's criminal history, which would have resulted in the same Guidelines range.

The district court sentenced Lucas to 135 months' imprisonment on each count, to be served concurrently.

**II.**

We review criminal sentences for substantive and procedural reasonableness under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). In order to determine whether a sentence is procedurally reasonable, we consider several factors, including "whether the district court properly calculated the Guidelines range." *United States v. Battaglia*, 624 F.3d 348, 350-51 (6th Cir. 2010).

When reviewing the district court's calculation of a Guidelines range, we "review the district court's factual findings for clear error and its legal conclusions *de novo*." *United States v. Bolds*, 511 F.3d 569, 579 (6th Cir. 2007). "A district court's determination that the defendant possessed a firearm during a drug offense is a factual finding that this court reviews under the clearly erroneous standard." *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008). "A finding of fact is clearly erroneous 'when, although there may be some evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *United States v. Darwich*, 337 F.3d 645, 664 (6th Cir. 2003)).

Lucas argues that the district court erred by applying a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1). Section 2D1.1(b)(1) provides that a defendant's base offense level for a drug offense must be increased by two levels "[i]f a dangerous weapon (including a firearm) was possessed." U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) (2011). "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.* at cmt. n.3.

> The government bears the burden of showing by a preponderance of the evidence that the defendant either actually or constructively possessed the weapon. . . . . Once the government meets its burden of showing that the defendant possessed a weapon, a presumption arises that the weapon was connected to the offense. The burden then shifts to the defendant to show that it was clearly improbable that the weapon was connected with the crime.

*Darwich*, 337 F.3d at 665 (internal quotation marks and citations omitted).

In 1991, the Guidelines were amended to remove the requirement that the weapon be possessed during the commission of the offense, thereby broadening the scope and applicability of

the enhancement. *United States v. Faison*, 339 F.3d 518, 520 (6th Cir. 2003). After the amendment, "all that the government need show is that the dangerous weapon [was] possessed during 'relevant conduct.'" *Id.* Relevant conduct includes "'all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" *Id.* (quoting U.S.S.G. § 1B1.3(a)(2)).

Lucas concedes that he possessed a weapon in October 2008 while he was involved in the drug conspiracy. However, he contends that the government must show more than the fact that he possessed a weapon during the time period in which he was engaged in illegal conduct in order to satisfy its initial burden. Lucas is mistaken. We repeatedly have held that the government meets its initial burden when it shows that the defendant possessed a weapon during the time period of a drug conspiracy. *See, e.g.*, *United States v. Benson*, 591 F.3d 491, 504 (6th Cir. 2010); *United States v. Milan*, 218 F. App'x 492, 495 (6th Cir. 2007).

Therefore, the burden shifted to Lucas to demonstrate that it was "clearly improbable" that the firearm he possessed was connected with the drug conspiracy. *See Darwich*, 337 F.3d at 665. In order to determine whether the application of a U.S.S.G. § 2D1.1(b)(1) enhancement was proper, we examine several factors, none of which is dispositive:

> (1) the type of firearm involved; (2) the accessibility of the weapon to the defendant; (3) the presence of ammunition; (4) the proximity of the weapon to illicit drugs, proceeds, or paraphernalia; (5) the defendant's evidence concerning the use of the weapon; and (6) whether the defendant was actually engaged in drug-trafficking, rather than mere manufacturing or possession.

*United States v. Greeno*, 679 F.3d 510, 515 (6th Cir. 2012) (quoting *United States v. Edmonds*, 9 F. App'x 330, 332 (6th Cir. 2001)).

The district court did not err when it held that Lucas did not demonstrate that it was "clearly improbable" that the weapon he possessed was connected to the drug conspiracy. The district court observed that Lucas possessed a .22-caliber pistol, a firearm commonly used in drug trafficking. *See United States v. Moses*, 289 F.3d 847, 851 (6th Cir. 2002) (observing that federal appellate courts consistently uphold U.S.S.G. § 2D1.1(b)(1) enhancements based on .22-caliber pistols). Even if a firearm is unloaded, this does not preclude application of the enhancement. *United States v. Soto*, 85 F. App'x 449, 454 (6th Cir. 2003). The district court also noted that, although there is no evidence that Lucas distributed drugs on the day that he possessed the firearm, the conspiracy involved conduct that took place in Lawrence County, where Lucas was arrested.

Lucas's attorney argued that Lucas was working on a house on the day that he was arrested and that Lucas's wife gave him the firearm to hold. However, the attorney offered no evidence to support these assertions. "A defendant must present evidence, not mere argument, in order to meet his or her burden." *Greeno*, 679 F.3d at 514; *see also Wheaton*, 517 F.3d at 368 (noting that "[t]he bare assertion of [defendant's] counsel" that a weapon may have been present for lawful purposes is insufficient to sustain defendant's burden). The only evidence that Lucas's attorney presented was the police citation, which did not address why Lucas possessed the firearm and, thus, did nothing to refute the presumption that the firearm was connected to the drug conspiracy. Moreover, the district court observed that even if it believed Lucas's attorney's version of events, it would not demonstrate that the weapon was not connected to the drug conspiracy.

If a defendant fails to meet his burden of showing that it was "clearly improbable" that the weapon was related to the drug conspiracy, "the district court should apply the enhancement."

7

*United States v. Catalan*, 499 F.3d 604, 606-07 (6th Cir. 2007).  Lucas did not meet his burden, and, thus, the district court properly applied the enhancement.  Because we hold that the application of the enhancement was proper, we need not consider Lucas's argument that the district court erred by noting, alternatively, that it could have counted Lucas's conviction toward his criminal history score.

## III.

For these reasons, we affirm Lucas's sentence.