NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0129n.06

No. 17-1817

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Mar 14, 2018
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| BRANDON LE SMITH, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN

BEFORE:    GILMAN, ROGERS, and STRANCH, Circuit Judges.

ROGERS, Circuit Judge.  Convicted on a guilty plea of possessing and intending to distribute 28 grams or more of cocaine base, Brandon Smith argues on appeal that the district court erred in applying the two-point possession-of-firearm sentencing enhancement, which applies "[i]f a dangerous weapon (including a firearm) was possessed."  U.S.S.G. § 2D1.1(b)(1). Smith argues that the firearm in question was not sufficiently connected to his offense because he possessed and sold drugs in his apartment while the firearm sat in a locked box in the trunk of his car.  However, the district court did not clearly err in finding a sufficient connection, where, among other things, officers observed Smith driving the car to a known drug-trafficking house and found the box for the gun inside Smith's apartment along with cocaine base, and where Smith admitted to cooking up cocaine base at his apartment while the car containing the gun was parked outside.

Smith sold cocaine base to a confidential informant on November 23, 2016, and again on December 13, 2016. Between those two sales, law enforcement observed Smith driving his car on November 26. On December 14, 2016, police executed a search warrant of Smith's residence. Inside Smith's apartment they found cocaine base, .22-caliber ammunition, and the box and receipt for a Taurus .45-caliber handgun. The police subsequently searched Smith's car and found the matching Taurus handgun. The serial number on the gun, which was found loaded and next to twenty rounds of .45-caliber ammunition, had been obliterated. After waiving his *Miranda* rights, Smith admitted that these items belonged to him and stated that the gun "was just there for protection."

On January 10, 2017, a grand jury indicted Smith on one count of possessing with intent to distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B)(iii), one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1), and one count of possessing a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k).

Smith pleaded guilty to the drug charge. At sentencing, the district court applied the two-level possession-of-firearm enhancement. Recognizing that Smith did not dispute that he had possessed the firearm, the court found that Smith had not shown a clear improbability that the gun was connected to the crime because of the gun's "close proximity" to Smith's drug trafficking. In making that determination, the court relied on evidence that: Smith had sold cocaine base to a confidential informant both before and after he was observed driving the car in which the gun was found; Smith was the primary driver of the car; Smith was aware of the gun safe in the car containing the gun; the gun's serial number was obliterated; and the ammunition for a different firearm was found in Smith's apartment inside a safe containing cocaine base.

On appeal, Smith now argues that the two-point enhancement should not apply because the gun was not present during the drug trafficking and was not connected to his crime, but these arguments do not warrant reversal. Smith waived appellate review of the district court's finding that the gun was present, and the court did not clearly err by determining that Smith had failed to demonstrate that it was "clearly improbable" that the gun was connected to his crime.

First, Smith waived his right to appeal the issue of whether the gun was present. Under the terms of Smith's plea agreement, he waived his right to appeal except under certain circumstances, including where "the district court incorrectly determined the Sentencing Guidelines range, if the defendant objected at sentencing on that basis."[1] Not only did Smith fail to object on this basis, he affirmatively conceded the point at his sentencing hearing:

> THE COURT: [L]et me hear you on your objection to the gun enhancement.
> MS. NIEUWENHUIS [SMITH'S COUNSEL]: . . . [T]he defense is asking the Court to look at this and perhaps not score the two points. *I don't think there's an issue as to whether or not the firearm was possessed.* We are really arguing whether or not it was in conjunction with drug trafficking, and I tried to make it clear in our sentencing memorandum. [Emphasis added.]

What is more, Smith failed to object to—or protest in any way—the district court's shifting of the burden to him,[2] which further supports our conclusion that he has waived review of this issue. Because Smith affirmatively conceded possession and failed to object to the application of

---

[1] Smith does not argue that that the plea agreement was invalid, nor does he claim to have entered into the agreement unknowingly or involuntarily.

[2] At Smith's sentencing hearing, the following exchange occurred without any objection by Smith:
> [THE GOVERNMENT]: It's probably worth starting out by pointing out that the standard here is slightly different than the normal preponderance standard.
> THE COURT: Yeah. The burden really is on [Smith] now.
> [THE GOVERNMENT]: It is. Once it's been demonstrated by a preponderance that the defendant possessed a firearm, and I think that the defendant concedes that, then it falls to the defendant to show that it was clearly improbable that the weapon was connected to the crime in order to avoid the enhancement.

the enhancement on the basis that the gun was not present, he cannot now make that argument on appeal.

Second, the district court did not err by applying the enhancement because Smith failed to demonstrate that it was clearly improbable that the weapon was connected with his drug offense. Because the government demonstrated—and Smith conceded—that Smith possessed the gun, "the burden then shift[ed] to [Smith] to show that it was clearly improbable that the weapon was connected with [his] crime." *United States v. Darwich*, 337 F.3d 645, 665 (6th Cir. 2003) (internal quotation marks omitted) (quoting *United States v. Hough*, 276 F.3d 884, 894 (6th Cir. 2002)); *see also United States v. Miggins*, 302 F.3d 384, 390–91 (6th Cir. 2016); *United States v. Penaloza*, 648 F. App'x 508, 518 (6th Cir. 2016).

It was not clear error for the district court to conclude that Smith had not met his burden. The record shows several ways that the gun was connected to Smith's drug trafficking. Law enforcement observed Smith driving to and entering a house known for drug trafficking. The gun was in the trunk of Smith's car parked outside of his apartment, in which Smith admitted to having cooked up cocaine base just before police executed the search warrant. Smith was the regular driver of the car and was aware of the loaded gun's presence in the car. Smith admitted that he owned the gun, and provided no explanation for the gun's obliterated serial number. Smith had been in possession of the gun since the summer of 2016, a timeframe that encompasses the controlled drug purchases. Smith has never claimed that the gun was not in the car during any relevant period. The box for the gun was found inside Smith's apartment in close proximity to the seized cocaine base and currency. Taking these facts together, the district court found that Smith had not shown that it was clearly improbable the gun was related to his drug offense. That finding was not clearly erroneous.

For Smith's argument to succeed, he must show that the district court was clearly erroneous to conclude that it was not clearly improbable that the gun was connected to his offense. That is a high burden and, in light of the facts mentioned above, Smith has not met it. In examining the probability of a connection, we weigh several factors, including:

> (1) the type of firearm involved; (2) the accessibility of the weapon to the defendant; (3) the presence of ammunition; (4) the proximity of the weapon to illicit drugs, proceeds, or paraphernalia; (5) the defendant's evidence concerning the use of the weapon; and (6) whether the defendant was actually engaged in drug-trafficking, rather than mere manufacturing or possession.

*United States v. Pryor*, 842 F.3d 441, 453 (6th Cir. 2016) (quoting *United States v. Greeno*, 679 F.3d 510, 515 (6th Cir. 2012)). Here, the weapon was a Taurus .45-caliber handgun, and "not an antique musket or hunting rifle that might be impractical in connection with drug trafficking," as was the case in *Pryor*, 842 F.3d at 453. The gun was loaded, and additional ammunition for that gun was present in the trunk of the car. Although the gun sat in a car parked outside of Smith's apartment, Smith could access the gun. In *United States v. Snyder*, 913 F.2d 300 (6th Cir. 1990), we held that, because the defendant's two handguns—which were found in the defendant's nightstand, while evidence of the drug offense was found in his basement—could have facilitated drug transactions, it was not clearly improbable that the firearms were connected to the drug offense at issue. *Id.* at 304. We also noted in *United States v. Faison*, 339 F.3d 518 (6th Cir. 2003), that, because the Sentencing Commission removed the restriction that a dangerous weapon be possessed during the commission of the offense of conviction, the weapon need only "be possessed during 'relevant conduct,'" as defined by U.S.S.G. § 1B1.3(a)(2). *Id.* at 520. The guidelines broadly define "[r]elevant conduct" as "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). Because the gun was a handgun, kept loaded and in the immediate vicinity while Smith was cooking cocaine base, he has not shown a clear improbability that it

was connected to his drug trafficking. The district court's conclusion was therefore not clearly erroneous.

Smith's arguments to the contrary are unavailing. He argues that, although his gun was in the car, he did not use the car for drug trafficking. But the mere fact that Smith was not observed making drug transactions out of his vehicle does not mean that the district court clearly erred in determining that the gun's presence in the car sufficiently connected the weapon to the drug-trafficking offense. Smith drove that car to a known drug-trafficking house, and he bore the burden to show that his primary mode of transportation was not involved in his drug-trafficking activities, which he has not done. Similarly, the fact that Smith cited personal protection, rather than drug trafficking, as his reason for having the gun in his car, does little to help his case. Just because Smith might have used the gun for protection does not mean that the gun was not also connected to drug trafficking. As the district court noted, "one of the reasons [Smith] has to protect himself is because he's engaged in drug dealing, which is also very violent." All told, Smith's arguments do not undermine the district court's conclusion that he failed to show that it was clearly improbable that his gun was connected to his drug-trafficking offense.

For these reasons, the district court did not err in applying the two-point possession-of-firearm enhancement. We affirm.