NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0179n.06

Case No. 24-3254

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="3"></td></tr>
<tr><td>Plaintiff-Appellee,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff-Appellee, | ) | Mar 31, 2025 |
|  | ) | KELLY L. STEPHENS, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE NORTHERN |
| DREW MILLER, | ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) |  |
|  | ) | O P I N I O N |

Before: CLAY, NALBANDIAN, and DAVIS, Circuit Judges.

**NALBANDIAN, Circuit Judge.** While investigating a shooting at a Menards home-improvement store, police began to suspect Drew Miller. After obtaining a warrant, officers searched Miller's vehicle and found two unregistered silencers, a pistol with an obliterated serial number, and multiple other firearms. Miller was indicted for possession of the unregistered silencers and a warrant issued for his arrest.

Months later, an officer arrested Miller and found two new, unregistered silencers in his car. So a superseding indictment added another count of possession of unregistered firearms. Miller pleaded guilty to both counts and was convicted. He appeals, in essence challenging the constitutionality of the federal firearm statutes and the reasonableness of his sentence. Rejecting both arguments, we affirm.

**I.**

On September 24, 2020, someone shot out the front windows of a Menards home-improvement store in Ontario, Ohio. The next day, Ontario Police Department officers reviewed surveillance footage and saw that a light-colored Ford Crown Victoria had entered the Menards parking lot before its occupant fired multiple shots into the store's front windows.

Later that day, the investigating officers received a tip from an anonymous source. The witness told them that a car matching the make and model of the one from the shooting had parked at Menards the day before the shooting. The car's occupant had gotten out and walked around, noting the locations of the store's security cameras. The witness then gave the officers the car's license plate number.

As a result of this tip, the officers thought that the owner of the Crown Victoria had been casing the store. So they ran the plate and found that the vehicle was registered to Drew Miller. The police discovered that the vehicle had a license plate concealer and other suspicious alterations. Based on this information, the officers got a warrant to search the vehicle and began surveilling Miller. This surveillance revealed that, months before the shooting, Miller had ordered .300 Blackout subsonic 200 grain full-metal jacket ammunition—the same ammunition that the officers believed to have been used in the Menards shooting. And so—the next day—officers seized Miller's vehicle and impounded it. During the search, officers discovered eight spent .300 Blackout shell casings behind the backseat.

But that was not all they found. Miller's Crown Victoria also had two unregistered silencers, four loaded pistols, a rifle, two knives, several boxes of ammunition in various calibers, and assorted tactical equipment—like lockpicks, a cell phone jammer, and the Official C.I.A. Manual of Trickery and Deception. And the serial number on one of the firearms, a Jennings

Firearms J22 pistol, had been removed. Miller was never charged for the Menards shooting, but the police did refer the case to the FBI. Under 26 U.S.C. § 5845(a)(7), the term "firearm" includes "any silencer." So based on his possession of the two unregistered silencers, a grand jury indicted Miller with one count of possessing an unregistered firearm in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. And on May 25, 2022, a warrant issued for Miller's arrest.

On July 9, 2022, a police officer in Streetsboro, Ohio, saw Miller pull over to the side of the road in a Ford Focus. Believing that Miller might be having car trouble, the officer went to help. But Miller refused to answer the officer's questions and began acting erratically. After checking Miller's identification and seeing that he had an outstanding warrant, the officer arrested Miller and impounded his car. During the routine inventory search of the car, officers discovered two more rifles, an additional pistol, and two new unregistered silencers. Later, another loaded pistol was found in a compartment hidden in the dashboard. Based on the unregistered silencers, the grand jury returned a superseding indictment charging Miller with a second count of possessing an unregistered firearm.

At the start, Miller was represented by Andrew J. Wides. But on February 2, 2023, Wides moved to withdraw as counsel, which the district court granted. Miller filed a CJA-23 Financial Affidavit so that the court could appoint new counsel under the Criminal Justice Act. Even though he was asking for a new attorney, Miller tried to file several letters with the court pro se. On February 23, 2023, the district court appointed Thomas Edward Shaughnessy as Miller's counsel, but Miller continued to file documents with the court pro se. Eventually, the attorney-client relationship deteriorated to the point that Miller moved to proceed pro se. The district court, after conducting the *Faretta* inquiry and after advising Miller against proceeding pro se, granted the motion and set the case for trial. *See generally Faretta v. California*, 422 U.S. 806 (1975).

Eleven days later, Miller had a change of heart. He moved to re-appoint Shaughnessy and said that he wanted to change his plea. The district court re-appointed Shaughnessy and allowed Miller to withdraw his plea of not guilty. Miller then pleaded guilty to both counts of possessing an unregistered firearm, and the court accepted this plea.

At sentencing, the district court calculated the advisory-Guidelines range. The court found that Miller had a base offense level of 18 under U.S.S.G. § 2K2.1(a)(5) because the offense involved a firearm—namely the silencers. Next, the district court applied a four-level enhancement, over Miller's objection, for the possession of a firearm with an obliterated serial number under U.S.S.G. § 2K2.1(b)(4)(B). Based on other enhancements and reductions not at issue here, the court calculated a total offense level of 21. This combined with a criminal history category I for a Guidelines range of 37 to 46 months' imprisonment.

FBI Special Agent Drew Stragar-Rice testified to support the government's request for a sentence on the higher end of the Guidelines range. He explained the evidence tying Miller to the Menards shooting, including the evidence recovered from his Crown Victoria. The government also introduced two exhibits showing the filed-off serial number on the Jennings J-22 pistol found in Miller's Crown Victoria.

The district court sentenced Miller to 46 months' imprisonment on each count to be served concurrently. The court acknowledged that this sentence was higher than the average length of imprisonment for similar defendants. And yet it explained that this disparity was driven by "the conduct of the defendant both at the time of the so-called Menards shooting and then the subsequent [traffic] stop in 2022." R.80, Sent'g Tr., p.45, PageID 387.

The district court emphasized that Miller's actions represented "a dangerous circumstance" and that it had "grave concerns about whether or not [Miller] will at some point decide that he is

4

entitled to possess a firearm or other dangerous ordnance and return to that pattern." *Id.* at pp.45–46, PageID 387–88. This conduct—along with Miller's history of assault—led the court to state that Miller "is a person who is a danger to the community, a danger to society, a danger who doesn't have enough insight to understand [that he] cannot have any of these items." *Id.* at p.33, PageID 375. Miller appealed.

## II.

Miller challenges the constitutionality of the federal firearms statute underlying his conviction. This challenge takes two forms. First, Miller argues that the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), requires this court to hold that 26 U.S.C. § 5861(d) violates the Second Amendment. Second, Miller argues that, as applied to him, 26 U.S.C. § 5861(d) is unconstitutional because there is no history and tradition of permanently disarming an individual for failure to register silencers.

### A.

We begin with Miller's constitutional challenge to 26 U.S.C. § 5861(d). Normally, we review a constitutional challenge de novo, but if the argument is not first raised before the district court, we review for plain error. *United States v. Bacon*, 884 F.3d 605, 610 (6th Cir. 2018). To succeed under plain-error review, the defendant must show "(1) an error, (2) that was obvious or clear, (3) that affected the defendant's substantial rights, and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Bauer*, 82 F.4th 522, 530 (6th Cir. 2023) (citing *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc)).

This is an exacting standard since the alleged error must have been "clearly contrary to the law at the time of appeal" such that there is no room for reasonable dispute. *United States v. Tellez*, 86 F.4th 1148, 1154 (6th Cir. 2023) (quoting *Johnson v. United States*, 520 U.S. 461, 468 (1997)).

So "[o]nly in exceptional circumstances" is an error so plain the district judge was "derelict" in allowing it to go forward. *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001).

Miller claims he challenged the constitutionality of § 5861(d) before the district court. And to his credit, he did in his pro se filings. But he filed these pro se documents while still represented by counsel.[1] As a result, they were part of a hybrid representation. A defendant engages in hybrid representation when he attempts "to participate in his own defense along with counsel," but the choice to allow such representation "is a matter committed to the sound discretion of the trial court." *United States v. Mosely*, 810 F.2d 93, 97–98 (6th Cir. 1987). Even though a criminal defendant has a right to self-representation, "[i]t is well settled that there is no constitutional right to hybrid representation." *United States v. Cromer*, 389 F.3d 662, 681 n.12 (6th Cir. 2004) (collecting cases). And without permission from the district court for a hybrid representation, a defendant's "legal arguments were required to be presented by his counsel." *United States v. Golson*, 95 F.4th 456, 460 (6th Cir. 2024).

The district court didn't grant leave for Miller's hybrid representation. As a result, it did not have to consider these pro se filings. For that reason, the court didn't address the merits of the pro se arguments. For sure, the court suggested that it would address the pro se motions if Miller went to trial without representation. But Miller's choice to reappoint Shaughnessy as counsel and plead guilty eliminated the need. And so the court never issued an order addressing these

---

[1] At two points in this proceeding Miller was not represented by counsel: (1) between February 2 and February 23, 2023, when Miller was waiting for the district court to appoint a new attorney and (2) between July 7 and July 20, 2023, when Miller was proceeding pro se before he asked for reappointment of counsel. While Miller did file several documents pro se during the first unrepresented period, none referenced the specific constitutional arguments that he raises on appeal.

arguments.[2] Since Miller's counsel did not make these arguments—either during the proceeding or when prompted by the district court at sentencing—they have not been preserved for appellate review.

For that reason, we review Miller's challenge to the constitutionality of 26 U.S.C. § 5861(d) for plain error. Miller maintains that, under *Bruen*, the district court erred in not holding that this statute violates the Second Amendment. But even assuming that Miller could show that the district court erred, § 5861(d)'s "defects are not plain under current law." *See United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015). While Miller claims that *Bruen* requires courts to declare § 5861(d) unconstitutional, he can point to no caselaw to buttress this conclusion.[3] After all "[w]ithout precedent explicitly holding that [§ 5861(d)] is unconstitutional and because it is unclear that *Bruen* dictates such a result," Miller cannot show plain error by the district court. *United States v. Johnson*, 95 F.4th 404, 417 (6th Cir. 2024). So Miller's first constitutional argument fails.

---

[2] Miller points to the district court's discussion of the pro se filings during the *Faretta* hearing as evidence that the court analyzed the merits and preserved the issue for appeal. It's true that the district judge said that he had "looked at most of [Miller's] motions" and believed that "most of [them] are really without any merit at this point." R.79, Status Hr'g Tr., p.5, PageID 328. But the repetition of "most" here is telling. The *Faretta* hearing transcript makes clear that the district court intended to address these motions and other filings on the merits if Miller continued pro se. But Miller's about-face on reappointing counsel eliminated the need to address these arguments. And since the district court never ruled on these motions, we cannot determine which arguments the district court considered on the merits—and which it did not.

[3] The two circuits who have considered the constitutionality of § 5861(d) in the wake of *Bruen* have upheld the statute. *See United States v. Peterson*, 127 F.4th 941, 946 (5th Cir. 2025); *United States v. Saleem*, No. 23-4693, 2024 WL 5084523, at *2 (4th Cir. Dec. 12, 2024) (per curiam). At a minimum, these cases indicate that the constitutionality of § 5861(d) under *Bruen*'s history and tradition test is still a matter of reasonable debate, which itself precludes a finding of plain error. *See United States v. Burrell*, 114 F.4th 537, 549–50 (6th Cir. 2024).

**B.**

Which brings us to Miller's as-applied challenge to permanent disarmament under 28 U.S.C. § 5861(d). Miller contends that "the punishment of lifetime dispossession for the possession of unregistered silencers is unconstitutional as applied to [him]." Appellant Br. at 8. But § 5861(d) does not provide for permanent disarmament. So even though he couches his challenge in terms of his conviction under § 5861(d), Miller is in essence challenging 18 U.S.C. § 922(g)(1), which imposes the permanent disarmament of felons. Unlike the previous argument, Miller's counsel preserved this issue for appellate review by objecting before the district court. So we review this constitutional challenge de novo. *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).

Section 922(g)(1) makes it "unlawful for any person—who has been convicted in any court of . . . a crime punishable by imprisonment for a term exceeding one year" to possess "any firearm or ammunition." So the statute permanently disarms all felons with each violation carrying a penalty of up to fifteen years' imprisonment. 18 U.S.C. § 924(a)(8). While we have held that this "provision is not susceptible to a facial challenge," some applications of § 922(g)(1) might still be unconstitutional. *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024). And we review as-applied challenges to § 922(g)(1) by asking "if a defendant's criminal history demonstrates dangerousness" such that permanent disarmament would be consistent with our nation's history and tradition of firearm regulation. *United States v. Morton*, 123 F.4th 492, 499–500 (6th Cir. 2024). If so, the statute is constitutional as applied. *Id.*

Before we can reach this constitutional issue, we must resolve the more basic question of whether Miller can bring such a challenge in this appeal. Unlike most defendants raising as-applied challenges to § 922(g)(1), Miller hasn't been charged as a felon in possession. How could

he? We are reviewing his first and only felony conviction. As a result he is not challenging a current conviction under that statute. Instead, he seeks to vindicate his future interest in possessing a firearm—that is, he wants to bring a pre-enforcement challenge to § 922(g)(1) as part of his direct criminal appeal of a different conviction.

Appeals in criminal cases—like this one—are taken from final judgments and reviewed under 28 U.S.C. § 1291. As a "general rule," these final judgments include both the conviction and the sentence. *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 54 (1989). But Miller was convicted of violating § 5861(d), not § 922(g)(1). So his challenge to § 922(g)(1) "would have no bearing on his guilty plea." *United States v. Risner*, 129 F.4th 361, 366 (6th Cir. 2025). For that reason, even a favorable result in this constitutional challenge "would do nothing to change 'the outcome of the litigation.'" *Id.* (quoting *Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701, 703 (6th Cir. 2009)). As a result, it cannot be part of the appeal of his conviction.

Nor can that constitutional challenge be part of the appeal of his sentence. Congress has limited appellate review of a defendant's sentence through 18 U.S.C. § 3742(a)'s "mandatory claim-processing rule." *United States v. Marshall*, 954 F.3d 823, 826 (6th Cir. 2020) (quoting *Fort Bend County v. Davis*, 587 U.S. 541, 549 (2019)). Here, it's limited to whether Miller's sentence "was imposed in violation of law." 18 U.S.C. § 3742(a)(1). The collateral consequences of Miller's status as a felon—like his inability to own a gun—are not part of his sentence under his final judgment and lie outside the scope of our review. So even though the potential for liability under § 922(g)(1) attached at the moment of the felony conviction, this future risk is not a part of

9

the challenged sentence itself. That Miller can challenge his sentence on appeal does not mean that he can raise a collateral challenge to a criminal statute not charged in his indictment.[4]

In the end, Miller's second constitutional argument does not affect either his conviction or sentence. As a result, he lacks the requisite "'personal stake' in § 922(g)(1)'s constitutionality" that would allow him to raise it on direct appeal. *Risner*, 129 F.4th at 366 (quoting *United States v. Bergrin*, 885 F.3d 416, 419 (6th Cir. 2018)). For that reason, his challenge to § 922(g)(1) cannot be part of this appeal of his conviction or sentence.

## III.

Miller next challenges the procedural reasonableness of his sentence. We review "preserved procedural-reasonableness claims for abuse of discretion" and unpreserved claims for plain error. *United States v. Taylor*, 800 F.3d 701, 713–14 (6th Cir. 2015). A sentencing court commits procedural error when it incorrectly calculates the advisory-Guidelines range, treats the calculated range as mandatory, imposes a sentence "based on clearly erroneous facts," or fails to provide enough explanation for the sentence imposed. *United States v. Xu*, 114 F.4th 829, 844–45 (6th Cir. 2024) (quoting *United States v. Gates*, 48 F.4th 463, 469 (6th Cir. 2022)).

Miller raises two procedural-reasonableness arguments. First, he argues that the district court erred in considering the Menards shooting as relevant conduct for sentencing. Second, he claims that the district court misapplied the four-level enhancement under U.S.S.G. § 2K2.1(b)(4)(B). Since Miller raised neither objection below, we review for plain error.

---

[4] Indeed, there are many state and federal consequences that flow from a felony conviction—most of which implicate important civil rights. *See, e.g.*, Ohio Rev. Code § 2961.01(A)(1) (listing the rights and privileges forfeited by felons under state law); 28 U.S.C § 1865(b)(5) (creating a permanent bar from felons from serving on federal juries). But because they are not part of the felony conviction, challenges to these restrictions occur in separate civil suits not in direct criminal appeals. *See, e.g.*, *Richardson v. Ramirez*, 418 U.S. 24, 26 (1974) (considering a civil challenge to California's statutory and constitutional provisions for the disenfranchisement of felons).

**A.**

At sentencing, a district court may consider "relevant conduct" when calculating the base offense level under the Guidelines.  U.S.S.G. § 1B1.3.  In determining what is relevant conduct, "the court looks to whether the activity was 'part of the same course of conduct or common scheme or plan as the offense of conviction.'"  *United States v. Bowens*, 938 F.3d 790, 798 (6th Cir. 2019) (quoting U.S.S.G. § 1B1.3(a)(2)).  But relevant conduct is a term of art that only applies to certain uncharged facts that a district court may use to calculate the advisory-Guidelines range.  Once the range has been calculated, the relevant conduct provision doesn't limit what a district court may consider in "its traditional fact-finding role."  *United States v. Osborn*, 12 F.4th 634, 636 (6th Cir. 2021).

Miller argues that the district court erred in viewing the Menards shooting as relevant conduct under U.S.S.G. § 1B1.3.  If the district court had considered the Menards shooting as relevant conduct and used it to increase the base offense level, that might well have been error.  But the district court did no such thing.  The Menards shooting didn't change the district court's calculation of Miller's base offense level.  And though the district court used the expression "relevant conduct" when discussing the Menards shooting, it did not use that term like U.S.S.G. § 1B1.3 does.  Rather, the judge was referring to conduct that informed his general sentencing decision.  The sentencing judge has an obligation to "make an individualized assessment based on the facts presented" and impose "an appropriate sentence" under 18 U.S.C. § 3553(a).  *Gall v. United States*, 552 U.S. 38, 50 (2007).  But that is different from the calculation of the Guidelines offense level.  And since the district court did not use the Menards shooting as relevant conduct under U.S.S.G § 1B1.3, we need not answer whether that would have been procedural error.

But Miller argues that—even if the district court did not consider the Menards shooting as relevant conduct under U.S.S.G. § 1B1.3—it still erred by relying on it to select the appropriate sentence. This argument fares no better. Although "[r]elying on clearly erroneous facts in selecting a sentence" constitutes a procedural error, Miller cannot show that the district court's factual determinations about the Menards shooting were "clearly erroneous." *United States v. Brinley*, 684 F.3d 629, 634 (6th Cir. 2012).

At sentencing, the government presented testimony describing how video surveillance showed the driver of a light-colored Crown Victoria had shot up the Menards storefront. The testimony discussed how an anonymous tipster had noticed Miller's Crown Victoria in the parking lot and had seen its owner noting the surveillance camera positions. And the testimony also revealed that the spent casings found in Miller's Crown Victoria matched the type of ammunition used in the Menards shooting. In light of this evidence, we cannot say that the district court's determination that Miller committed the Menards shooting was error. And if the district court's factual findings are not clearly erroneous, then this court must accept them. *United States v. Amerson*, 886 F.3d 568, 573 (6th Cir. 2018). For that reason, Miller's argument fails.

**B.**

In his final argument, Miller claims that the district court misapplied the four-level enhancement under U.S.S.G. § 2K2.1(b)(4)(B) because it did not use the naked-eye test in finding that the serial number on the Jennings J22 pistol had been obliterated. This court has held that a serial number is "altered or obliterated" under U.S.S.G. § 2K2.1(b)(4) "when it is materially changed in a way that makes accurate information less accessible." *United States v. Sands*, 948 F.3d 709, 714 (6th Cir. 2020) (quoting *United States v. Carter*, 421 F.3d 909, 916 (9th Cir. 2005)). So a serial number not visible to the "naked eye" is considered altered or obliterated. *Id.* at 715.

While the district court didn't reference the naked-eye standard in finding that the serial number on Miller's pistol had been obliterated, this doesn't require reversal. At sentencing, the government introduced two exhibits of the serial number on the Jennings J22 pistol, which showed that the number was not visible to the naked eye. And Special Agent Stragar-Rice testified to the content and authenticity of these photos. As a result, the district court concluded that the government had shown that "[o]ne of the firearms Mr. Miller possessed had an obliterated serial number"—a finding that Miller did not challenge below. R.80, Sent'g Tr., p.41, PageID 383.

Given this clear evidence, the district court's decision not to reference the naked-eye test—especially since both parties agreed that the serial number was obliterated—was not error.

**IV.**

For these reasons, we AFFIRM.

13