NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0502n.06

Case No. 24-6157

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Oct 28, 2025
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff - Appellee, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| BILLY J. WILKINS | ) |
| Defendant - Appellant. | ) OPINION |
| | ) |

Before: GIBBONS, McKEAGUE, and RITZ, Circuit Judges.

**RITZ, Circuit Judge.** A jury found Billy Wilkins guilty of federal gun and drug crimes. Wilkins appeals, arguing the district court abused its discretion by denying his pre-trial motion to suppress and his post-trial motion for a new trial. He also argues that his gun charges were unconstitutional. We affirm.

## BACKGROUND

### I. Search and arrest

Suspecting that Billy Wilkins was dealing drugs, officers in the Jessamine County, Kentucky, Sheriff's Department obtained a warrant to search his home. When the officers arrived, Wilkins locked them out, so they broke down the front door, handcuffed him, and brought him outside. The officers also detained Wilkins's live-in girlfriend Heather DePew next to Wilkins on the front porch.

Because Wilkins started talking to the officers, they decided to read him his *Miranda* rights. To do so, one officer read the warnings off an index card to both Wilkins and DePew. As the

officer read, DePew was standing and "looking at [him] right in [his] face," and Wilkins was sitting next to her on the porch. RE 34, Suppression Hr'g Tr., PageID 209. When the officer asked Wilkins if he understood the warnings, Wilkins nodded. The officer later testified that he had a "faint memory" of Wilkins responding verbally with "some sort of uh-huh or yeah." *Id.* at PageID 202-03, 211.

Almost immediately after being informed of his *Miranda* rights, Wilkins truthfully told the officers there were guns in the house and where to find one of them. The officers found a revolver in the living room ottoman and a Glock pistol under the primary bathroom sink. They also found fentanyl, methamphetamine, and cocaine.

## II. Pretrial motions and conviction

The government charged Wilkins with possessing cocaine, fentanyl, and methamphetamine with intent to distribute, 21 U.S.C. § 841(a)(1); possessing a firearm in furtherance of those drug trafficking crimes, 18 U.S.C. § 924(c)(1)(A); and being a felon in possession of a firearm, *id.* § 922(g)(1).

Before trial, Wilkins moved to suppress his statement about guns inside the house and the resulting evidence found by the officers. He argued that he was improperly read his *Miranda* rights because the officer who read the warnings did not read them directly to Wilkins and instead focused on DePew. Additionally, according to Wilkins, the government had not shown that Wilkins knowingly waived his right to remain silent.

Wilkins also moved to dismiss the gun charges, arguing that they violated his Second Amendment right to bear arms. Alternatively, Wilkins argued that under the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the felon-in-possession statute was unconstitutionally vague.

The district court denied both motions. On the suppression argument, the court concluded that "police may read *Miranda* rights to a group of individuals simultaneously as long as each person understands their rights," RE 41, Order, PageID 290, and that Wilkins's nod and verbal assent were enough evidence that he understood the warnings. The court also declined to dismiss the gun charges, finding that the prosecution of Wilkins for gun crimes did not violate the Second Amendment.

Wilkins went to trial. As part of its case, the government called DePew, who received immunity in exchange for providing truthful testimony. She testified that she saw Wilkins deal drugs and recalled Wilkins leaving their house several times with a gun to meet with people outside, then coming back inside shortly after. The jurors subsequently found Wilkins guilty on all counts, except for one drug-distribution charge that the government dismissed.

## III.    New trial motion

Shortly after the verdict, Wilkins called DePew from jail. During their conversation, Wilkins repeatedly implied that DePew was pressured into her testimony. He asked her to instead "tell the truth," Jail Call 1, at 11:36, by which he meant that DePew had "never seen [him] take a gun out of the house to talk to people." *Id.* at 01:35. Wilkins persistently insinuated that if DePew loved him, she would tell his lawyer that she never saw him take a gun from their home. *See, e.g.*, *id.* at 13:43 ("You have to tell them that was not true. You have to. You love me, right? You said you love me."); Jail Call 2, at 01:24 ("You have to tell my lawyer that [your testimony] was not true. That was not the truth. You have to."). Although DePew agreed during the conversation that, "you're right, I didn't," Jail Call 1 at 02:50; *see also id.* at 08:33 ("[M]e and you both know I ain't never watched you walk out the house."), she nonetheless maintained that she was "truthful

- 3 -

on the stand." *Id.* at 04:06. She explained to Wilkins that she felt intimidated and "t[aken] advantage of" by the prosecutors. *Id.* at 03:15, 04:09-04:35.

Wilkins moved for a new trial, citing the phone call as proof that DePew lied in her trial testimony. The district court disagreed and denied the motion. Because DePew's statements on the phone call were "unsworn" and "made under significant emotional pressure," the court determined that they were less credible than her testimony under oath at trial. RE 177, Order, PageID 2088-91, 2092.

The district court sentenced Wilkins to 360 months' imprisonment. Wilkins appealed.

## ANALYSIS

### I. Motion to suppress

When reviewing a ruling on a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Crumpton*, 824 F.3d 593, 604 (6th Cir. 2016). The Supreme Court has "established certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation." *Duckworth v. Eagan*, 492 U.S. 195, 201 (1989) (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)). These warnings do not require a "precise formulation," *id.* at 202 (quoting *California v. Prysock*, 453 U.S. 355, 359 (1981)), but officers must "'adequately and effectively' advise[]" a person subject to a custodial interrogation of their rights. *Missouri v. Seibert*, 542 U.S. 600, 611 (2004) (quoting *Miranda*, 384 U.S. at 467). "[I]t would be absurd to think that mere recitation of the litany suffices to satisfy *Miranda* in every conceivable circumstance." *Id.*

Here, the officer, using an index card, read Wilkins and Depew their *Miranda* rights simultaneously. As the officer read the warning, he generally focused his attention on DePew,

"making eye contact with [her] . . . most of the time." RE 34, Suppression Hr'g Tr., PageID at 209. After he finished, the officer asked Wilkins and DePew if they understood their rights. Wilkins nodded and verbally acknowledged that he did. Almost immediately after, Wilkins verbally incriminated himself, informing the officers that there were guns in the house and where one gun was located.

Wilkins concedes that the key "question is whether [his *Miranda*] rights were reasonably conveyed by the police," not how many individuals heard the rights. CA6 R. 17, Appellant Br., at 15 (citing *Missouri*, 542 U.S. at 612). He nonetheless argues a reading of *Miranda* rights "*en masse*, whether it be two people or twenty" is insufficient, and that the rights "should be given directly and independently to the individual the police want to question." *Id.* at 15-16. But Wilkins does not provide any legal support for his proposed bright-line rule, and he does not dispute the key fact that he understood his rights when the officer read them aloud. Under the circumstances of this case, the simultaneous warning provided to Wilkins and DePew was "not likely to confuse a reasonable listener." *United States v. Clayton*, 937 F.3d 630, 639 (6th Cir. 2019); *see also United States v. Ramamoorthy*, 949 F.3d 955, 965 (6th Cir. 2020) (affirming district court's denial of motion to suppress where defendant "nodded his head in apparent understanding" and initialed waiver form). Accordingly, we affirm the denial of Wilkins's motion to suppress.

## II.    Constitutionality of firearms charges

Wilkins also brings constitutional challenges to 18 U.S.C. § 922(g)(1) and § 924(c)(1)(A), both facially and as applied to him. We review these challenges *de novo*. *United States v. Risner*, 129 F.4th 361, 364 (6th Cir. 2025). Wilkins's arguments are unavailing.

### A.    Facial challenges to 18 U.S.C. § 922(g)(1) and § 924(c)(1)(A)

Section 922(g)(1) prohibits anyone convicted of a "crime punishable by imprisonment for a term exceeding one year" from possessing a firearm. 18 U.S.C. § 922(g)(1). This court recently determined § 922(g)(1) "is constitutional on its face." *United States v. Williams*, 113 F.4th 637, 662 (6th Cir. 2024). Wilkins acknowledges the holding of *Williams*, but he argues the statute's categorical ban on felons' possession of firearms is nonetheless unconstitutional.

"There have been no developments in the case law to indicate that we must depart from *Williams*." *United States v. Greely*, No. 23-1978, 2025 WL 1797223, at *5 (6th Cir. June 30, 2025); *see also Salmi v. Sec'y of Health & Hum. Servs*., 774 F.2d 685, 689 (6th Cir. 1985*)* ("A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.") (citation omitted). Similarly, this court has already determined that § 924(c)(1)(A) is facially constitutional, and Wilkins cannot "mount a successful facial challenge to the statute." *Risner*, 129 F.4th at 369 (affirming district court's rejection of a facial challenge to § 924(c)(1)(A)). Wilkins's facial challenges therefore necessarily fail.

### B.    As-applied challenge to 18 U.S.C. § 924(c)(1)(A)

Wilkins's as-applied challenge to § 924(c)(1)(A) also fails. Section 924(c)(1)(A) prohibits the use or carrying of a firearm "during and in relation to any crime of violence or drug trafficking crime" or possessing a firearm "in furtherance of any such crime." 18 U.S.C. § 924(c)(1)(A). Wilkins argues his conviction intruded on his right to possess a firearm "[m]erely because [he] had been accused of possessing drugs within his residence with intent to traffic drugs." CA6 R. 17, Appellant Br., at 37. He suggests a conviction under § 924(c)(1)(A) based on "finding drugs and

guns in proximity to one another . . . uses circumstantial evidence to strip the right to defend oneself in his home." *Id.* at 38.

But here, Wilkins was not merely "accused" of possessing drugs with the intent to traffic them, he was *convicted* of possession with intent to distribute controlled substances and possessing a firearm in furtherance of that drug crime. The Second Amendment protects the right to bear arms for "lawful purposes." *District of Columbia v. Heller*, 554 U.S. 570, 624-25 (2008). "An individual who uses a firearm 'in relation to any crime of violence or drug trafficking crime' or 'in furtherance of any such crime, possesses a firearm' as proscribed by § 924(c)(1)(A) is not bearing arms *for a lawful purpose*." *United States v. Underwood*, 129 F.4th 912, 929 (6th Cir. 2025). And Wilkins does not dispute that he used a firearm for an unlawful purpose. "Because § 924(c)(1)(A) expressly prohibits the use of a firearm during the commission of a drug trafficking crime—an objectively unlawful purpose—and" Wilkins does not dispute he possessed a firearm "in connection with drug trafficking, § 924(c)(1)(A) lawfully applies" to Wilkins. *Risner*, 129 F.4th at 369.

## C. As-applied challenge to 18 U.S.C. § 922(g)(1)

Wilkins also challenges the constitutionality of § 922(g)(1) as applied to him. As this court explained in *Williams*, § 922(g)(1) is constitutional "as applied to dangerous people." *Williams*, 113 F.4th at 663. Wilkins challenges only the procedure for determining dangerousness that *Williams* delineated, not the district court's determination that he is dangerous. But as explained above, we are bound by *Williams*. *See United States v. Williams*, No. 24-1244, 2025 WL 1089531, at *2 (6th Cir. Apr. 11, 2025) (concluding that the "dangerousness inquiry described in *Williams*" is not unconstitutional). Wilkins's as-applied challenge similarly fails.

**D.     Vagueness challenge to 18 U.S.C. § 922(g)(1)**

Wilkins also argues § 922(g)(1) is unconstitutionally vague and overbroad.  A criminal statute is unconstitutionally vague where it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015).  "[I]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001) (quoting *United States v. Powell*, 423 U.S. 87, 92 (1975)).  Wilkins, then, "bears the burden of establishing that the statute is vague as applied to his particular case, not merely that the statute could be construed as vague in some hypothetical situation." *Id.*  Because a "strong presumptive validity" applies to all Congressional acts, "[f]ew statutes meet the void-for-vagueness threshold." *United States v. Kettles*, 970 F.3d 637, 650 (6th Cir. 2020).

Wilkins does not attempt to argue the statute is vague "as applied to his particular case." *Krumrei*, 258 F.3d at 537.  He only argues the statute is vague as a general matter.  Accordingly, his claim fails.

**III.     Motion for a new trial**

Finally, Wilkins argues the district court improperly denied his motion for a new trial because DePew's recantation was more credible than her trial testimony and the district court "should have held an evidentiary hearing before making a credibility determination."  CA6 R. 17, Appellant Br., at 49.  We review a district court's "denial of a motion for a new trial for an abuse of discretion." *United States v. Betro*, 115 F.4th 429, 443 (6th Cir. 2024) (citation modified).  A district court abuses its discretion when it "relies on clearly erroneous findings of fact, uses an

erroneous legal standard, or improperly applies the law." *United States v. Dado*, 759 F.3d 550, 559 (6th Cir. 2014) (citation modified).

To determine whether a new trial should be granted, we use the test adopted in *Gordon v. United States*, 178 F.2d 896 (6th Cir. 1949), asking if: (1) the court is "reasonably well satisfied" the trial testimony given by the material witness is false; (2) without her false testimony, "the jury might have reached a different conclusion"; and (3) the movant was "taken by surprise when the false testimony was given, and was unable to meet it or did not know of its falsity until after the trial." 178 F.2d at 900. "The defendant bears the burden of proving that a new trial should be granted." *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994). Generally, "new trial motions are disfavored and should be granted with caution." *United States v. Willis*, 257 F.3d 636, 645 (6th Cir. 2001). And there is a presumption in favor of the truth of sworn statements. *See United States v. Lewis*, 338 F.2d 137, 139 (6th Cir. 1964) ("Where the newly discovered evidence consists of recantation of testimony given at the trial, such recantation is looked upon with the utmost suspicion . . . .") (citation modified).

Here, the district court resolved the motion on the first *Gordon* factor, finding it was not reasonably well satisfied DePew's trial testimony was false or that her "recantation was true." RE 177, Mem. Order & Op. Denying New Trial Mot., PageID 2088. As the court that presided over the trial, the district court was "uniquely qualified" to evaluate DePew's credibility. *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991), *superseded by statute on other grounds as recognized in United States v. Avery*, 128 F.3d 966, 972 (6th Cir. 1997).

Wilkins argues the district court committed "clear error" by crediting DePew's "tortured" testimony—where she was medicated with "four different anti-anxiety medications" and contradicted previous statements to the police—above her jailhouse calls. CA6 R. 17, Appellant

Br., at 49, 51-52. But as the district court noted, DePew knew she was testifying under oath, and her immunity deal was contingent on giving truthful testimony. Because *sworn* affidavits recanting trial testimony are treated "with extreme suspicion," the court reasonably treated DePew's *unsworn* statements recanting her testimony with even more pronounced suspicion. *Willis*, 257 F.3d at 645 (citation modified). Moreover, it is not an abuse of discretion for a district court to be suspicious when "the recanting witness is a family member and the witness has feelings of guilt or the family members seek to influence the witness to change [her] story." *Id.* at 646 (citation modified). Although DePew is not an immediate family member, the district court correctly determined that "her status as Wilkins's ex-girlfriend (who clearly loves him) brings these guilt and influence concerns into full force." RE 177, Mem. Order & Op. Denying New Trial Mot., PageID 2089.

In sum, the district court did not clearly abuse its discretion when it found DePew's recantation, given after three calls with Wilkins in which he repeatedly pressured her to recant her testimony, was not credible. Because Wilkins cannot meet the first *Gordon* prong, the court need not evaluate the remaining factors. *See Chambers*, 944 F.2d at 1264 (affirming district court's denial of motion for new trial when defendant failed to meet first *Gordon* prong).

Separately, Wilkins argues the district court abused its discretion when it denied his request for an evidentiary hearing on his new trial motion. Although a district court *may* hold an evidentiary hearing on a new trial motion, "[t]he question of whether to decide a motion on the supporting evidence filed with the motion or to hold an evidentiary hearing is within the discretion of the trial court." *United States v. Smith*, 749 F.3d 465, 493 (6th Cir. 2014) (quoting *United States v. O'Dell*, 805 F.2d 637, 643 (6th Cir. 1986)). Here, the district court reasonably exercised its discretion in denying Wilkins's request for an evidentiary hearing. Below, even Wilkins's counsel

acknowledged to the court that if DePew were subpoenaed to be present at an evidentiary hearing, DePew could "plead the Fifth" to avoid subjecting herself to perjury charges.  RE 194, Hr'g on Mot. For New Trial Tr., at PageID 2180.  The district court reasonably found an evidentiary hearing would not assist its evaluation, especially where it already observed DePew at trial and was "uniquely qualified to pass on [her] credibility."  *Willis*, 257 F.3d at 644 (citation modified).

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.